## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| LAWRENCE MICHAELS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 10-96-SLR |
| | ) |
| PERRY PHELPS, | ) |
| Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE | ) |
| OF DELAWARE | ) |
| | ) |
| Respondents. | ) |

Lawrence Michaels. Pro se petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

February  *19*  , 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is Lawrence Michaels' ("petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) Petitioner is a Delaware inmate in custody at the James T. Vaughn Correctional Center, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

During the afternoon of April 3, 2006, co-defendants petitioner and Andre Wright were riding their motorcycles around Philadelphia and stopped to play a game of dice with Tyreese Hawthorne. Defendant Hawthorne then asked petitioner and Wright to go for a ride with him, because he (Hawthorne) needed to "pick up his money." Hawthorne also asked Saladine Pitts, an acquaintance, to drive them in his car. The four drove to Houlihans, a restaurant in Philadelphia, and upon arriving there, Hawthorne exited Pitts' car and got into a car driven by Rasheem Sims. About four minutes later, Hawthorne returned to Pitts' car, which then followed Sims down I-95 to Bear, Delaware. Sims parked his car, and Pitts parked his car a distance away.

While Sims was walking back to his apartment, he heard people running behind him. The running individuals turned out to be the defendants and Pitts (collectively the "robbers"), who attacked Sims from behind, struck him several times with a metal object, went through Sims' pockets and then led him, at gunpoint, to his apartment. When the group reached the door of the apartment, Sims rang the doorbell. Crystal

---

[1]The factual history is recounted from the Delaware Supreme Court's opinion in *Michaels v. State*, 970 A.2d 223, 226 (Del. 2009). The procedural history is summarized from the State's answer (D.I. 12) and the state court record (D.I. 15).

Donald, Sims' girlfriend, answered the door. When she saw that Sims was bleeding from a head wound, she began screaming. The robbers pushed their way into the apartment, forced Sims into his bedroom, and began searching for money.

Donald was led into the kitchen at gunpoint and robbed of her jewelry. Tashika Townsend, Donald's sister, was forced into her bedroom and then into the kitchen. Donald's daughter was also brought into the kitchen. Shortly thereafter, one of the robbers opened the door and yelled "the law is here!" The robbers then forced Donald to take them to the balcony. From there, the robbers forced their way into the adjoining apartment, threatened its resident, Daniel Moran, and demanded that he let them out. While the robbers were threatening Moran, a laser light shined into the apartment, causing the robbers to panic. Three of the robbers fled deeper into Moran's apartment.

At that point, New Castle County Police Department ("NCCPD") officers burst into Moran's apartment and apprehended Pitts in the living room. They found the other robbers hiding in various places in that apartment – Wright under a mattress in a bedroom, Hawthorne in a bathtub, and Michaels under a pile of clothing in a closet. The police took all four robbers into custody, searched them, and recovered property belonging to Sims, Donald, and Townsend. The police also found, on Hawthornes' person, a "RAZR" cell phone that belonged to Townsend. Later that night the officers recovered two guns - one on the deck behind Moran's apartment and another on the ground behind the building. A third gun was found in Moran's apartment several days later.

Petitioner was indicted in May 2007 and charged with, inter alia, first degree kidnapping and multiple counts of first degree robbery. Petitioner, Hawthorne, and

2

Wright were tried together in March 2008. Petitioner was convicted of eleven of the fifteen counts, and was sentenced to twenty-two years of incarceration, suspended after nineteen years for a period of probation. The Delaware Supreme Court affirmed petitioner's convictions on direct appeal.

Petitioner timely filed his application. (D.I. 1) The State filed its answer, contending that petitioner's sole claim must be denied for failing to satisfy § 2254(d). (D.I. 12) Petitioner filed a reply in opposition. (D.I. 16) Petitioner's application is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA also imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford,* 538 U.S. at 206.

One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion

3

requirement is grounded on principles of comity to ensure that state courts have the

initial opportunity to review federal constitutional challenges to state convictions. *Werts*

*v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion

requirement by "fairly presenting" the substance of the federal habeas claims to the

state's highest court, either on direct appeal or in a post-conviction proceeding, and in a

procedural manner permitting the state courts to consider them on the merits. *See*

*Duncan v. Henry,* 513 U.S. 364, 365 (1995); *Lambert v. Blackwell,* 134 F.3d 506, 513

(3d Cir. 1997).

## B. Standard of Review

When a state court has adjudicated a petitioner's habeas claim on the merits, a

federal district court can only grant habeas relief if the state court's adjudication of the

claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v.*

*Horn,* 250 F.3d 203, 210 (3d Cir. 2001). Clearly established federal law for § 2254(d)(1)

purposes refers to Supreme Court holdings, rather than dicta, that were clearly

established at the time of the pertinent state court decision. *See Greene v. Palakovich,*

606 F.3d 85 (3d Cir. 2010). In turn, a claim has been "adjudicated on the merits" for the

purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on

the basis of its substance, rather than on a procedural or some other ground. *Thomas*

4

*v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d)
applies even "when a state court's order is unaccompanied by an opinion explaining the
reasons relief has been denied"; as recently explained by the Supreme Court, "it may
be presumed that the state court adjudicated the claim on the merits in the absence of
any indication or state-law procedural principles to the contrary." *Harrington v. Richter*,
__ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the
state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This
presumption of correctness applies to both explicit and implicit findings of fact, and is
only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1);
*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S.
322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies
to factual issues, whereas the unreasonable application standard of § 2254(d)(2)
applies to factual decisions).

## IV. DISCUSSION

Petitioner asserts two grounds for relief: (1) he was denied a fair trial when the
trial court refused to grant a mistrial after a police officer testified that petitioner had a
teardrop tattoo on his face; and (2) he was denied a fair trial when the trial court refused
to grant a mistrial after the trial judge denied a prosecutor's request to approach him
during cross-examination with an unloaded firearm. The Delaware Supreme Court
denied both claims as meritless. Therefore, petitioner will only be entitled to relief if that
court's decision was either contrary to, or an unreasonable application of, clearly

5

established federal law.

The clearly established law governing mistrial claims was articulated in *United States v. Perez*, 22 U.S. 579 (1824) and its progeny. Pursuant to *Perez*, trial judges may declare a mistrial "whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity" for doing so. *Id.* at 580. "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, 599 U.S. 766, 130 S.Ct. 1855, 1863 (2010). Since *Perez*, the United States Supreme court has "clarified that the 'manifest necessity' standard cannot be interpreted literally, and that a mistrial is appropriate when there is a high degree of necessity." *Id.*

The Delaware Supreme Court applied Delaware law when it reviewed the trial court's denial of petitioner's motions for mistrial. In Delaware, "a mistrial is warranted only where there is a manifest necessity or the ends of public justice would be otherwise defeated, and there are no meaningful and practical alternatives to that remedy." *See Dawson v. State*, 637 A.2d 57, 62 (Del. 1994)(citing cases). Because this standard mirrors the standard articulated in *Perez*, the court concludes that the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court's inquiry is not over, however, because it must determine if the Delaware Supreme Court reasonably applied federal law when it affirmed the trial court's decision. The court will perform its unreasonableness review of the claims in seriatim.

6

## A. Claim One: Trial Court Should Have Declared Mistrial For Prosecutor's Tattoo Remark

Petitioner asserts that the trial court violated his right to a fair trial by refusing to grant his application for a mistrial after Officer Gautier testified that he noticed a teardrop tattoo on petitioner's face the day he arrested him. According to petitioner, the jury may have associated the presence of the teardrop tattoo on his face as symbolizing his involvement in a gang. Petitioner contends that a mistrial was warranted because there was "a strong likelihood that the effect of the" statement regarding the teardrop tattoo on his face was "very devastating" to his credibility and may have led the jury to presume his guilt. (D.I. 16) The Delaware Supreme Court rejected this same argument on direct appeal, holding that the trial court did not err in denying petitioner's request for a mistrial because the trial court's curative instruction was sufficient to cure any harm to petitioner.

Pursuant to well-settled Supreme Court precedent, courts

normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.

Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). In petitioner's case, the trial court gave the following curative instruction (which was the one proffered by defense counsel):

I am instructing you to strike from your consideration the testimony of Officer Gautier on Friday that he observed a tattoo on the face of [petitioner]. This means you may not consider this evidence for any purpose and you are to treat this evidence as if it had not been presented to you.

(D.I. 15, States Ans. Br. at 13, Michaels v. State, No.334, 2008) This instruction was clear, adequate, and forceful, and cured any potential harm that may have been caused

7

by Officer Gautier's statement. Additionally, petitioner's conclusory and unsupported allegation in this proceeding that he was prejudiced by Officer Gautier's reference to his teardrop tattoo fails to establish an "overwhelming probability" that the jury was unable to follow the trial court's instruction to disregard Officer Gautier's statement. In these circumstances, the court concludes that the Delaware Supreme Court reasonably applied clearly established federal law in rejecting petitioner's argument. Accordingly, the court will deny claim one.

## B. Claim Two: Trial Court Should Have Declared A Mistrial After Denying Prosecutor's Request To Approach Him With An Unloaded Firearm

In claim two, petitioner contends that his right to a fair trial was violated when the trial court refused to grant his request for a mistrial after the trial judge denied the prosecutor's request to approach petitioner with an unloaded firearm because of security concerns expressed by a Department of Correction ("DOC") officer. Petitioner asserts that, at a minimum, the trial court should have issued a cautionary instruction after the incident.

The relevant facts surrounding this argument are as follows. Petitioner took the witness stand on March 5, 2008. During cross-examination, the prosecutor asked petitioner if he could identify State's exhibit 28, a handgun with a black handle. (D.I. 15, State's Ans. Br. at 15 in *Michaels v. State*, No.334,2008) The prosecutor approached petitioner with the gun and, according to the bailiff, petitioner touched the gun's handle. When it appeared that the prosecutor intended to approach petitioner with another weapon, a DOC officer stood up and quietly expressed his concerns to the bailiff about the prosecutor's proximity to petitioner, who relayed those concerns to the trial judge.

8

The trial judge then requested that the prosecutor question the witness from where she was standing. *Id.*

After the prosecutor finished her questions, defense counsel requested a sidebar conference at which petitioner's counsel moved for a mistrial, arguing that the court's instruction to the prosecutor prejudiced petitioner by improperly suggesting to the jury that petitioner was a security risk. *Michaels*, 970 A.2d at 228. The trial judge denied petitioner's request for a mistrial, noting for the record that the jury did not appear to react to the incident at all. *Id.* The judge also stated that, "in criminal trials, for better or worse, attorneys holding weapons occasionally come too close to a testifying defendant, and that politely requesting the attorney to question the defendant from where she was standing is a proper way to balance the need to avoid prejudice against legitimate security concerns." *Id.*

On direct appeal, the Delaware Supreme Court asserted that the trial judge's response to the DOC officer's request was a measured approach that was not unreasonable, and rejected petitioner's argument that the trial court erred in denying his request for a mistrial. The Delaware Supreme Court also rejected petitioner's complaint about the failure to give a cautionary instruction, holding that petitioner was not entitled to relief because he did not request a cautionary instruction at trial and he cited no authority requiring the court to instruct the jury sua sponte. *Id.* at 230-31.

Distilled to its core, petitioner's instant contention is that the trial court erred in denying his motion for a mistrial because the security concern expressed by the trial judge and the DOC officer prevented him from receiving a fair trial and infringed upon the presumption of innocence due to him. The applicable standard for reviewing claims

9

alleging constitutional violations caused by excessive court room security measures

was articulated in *Holbrook v. Flynn*, 475 U.S. 560, 567-8 (1986). Pursuant to

*Holbrook*, a federal habeas court reviewing the constitutionality of a state court's use of

courtroom security must

> look at the scene presented to jurors and determine whether what they saw was
> so inherently prejudicial as to pose an unacceptable threat to defendant's right to
> a fair trial; if the challenged practice is not found inherently prejudicial and if the
> defendant fails to show actual prejudice, the inquiry is over.

*Id.* at 572. Notably, the Supreme Court has not articulated specific rules for identifying

unacceptable risks to a defendant's right to a fair trial. Rather, a case-by-case

approach must be used when determining if courtroom security concerns constitute

unacceptable practices, and a court's scrutiny should be "based on reason, principle,

and common human experience." *Holbrook*, 475 U.S. at 569; *Estelle v. Williams*, 425

U.S. 501, 504 (1976). Indeed, the only unacceptable practices explicitly identified by

the Supreme Court include requiring an accused to wear jail clothing at trial and

shackling the accused in certain circumstances. *See Holbrook*, 475 U.S. at 568;

*Estelle*, 425 U.S. at 504.

In this case, petitioner has failed to demonstrate that the actions of the DOC

officer and trial judge were inherently prejudicial or that he suffered actual prejudice

from said actions. As the trial judge noted, there is no evidence that the jury even

noticed the incident. Moreover, the fact that the jury ultimately acquitted petitioner of

five of the sixteen charges he faced, including two of the robbery counts, shows that

petitioner was not prejudiced by any error relating to the prosecutor's aborted attempt to

bring the gun closer to petitioner. Given petitioner's failure to demonstrate that the

security concern expressed by the trial judge and DOC officer created an unacceptable risk of prejudice requiring a mistrial or a cautionary instruction, the court cannot conclude that the Delaware Supreme Court unreasonably applied Supreme Court precedent in holding that petitioner was not denied a fair trial. Accordingly, the court will deny claim two.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.

11